**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Walter Schinzing,** **Civil No. 00-CV-2686 (MJD/SRN)**

**Plaintiff,**

**v.** **ORDER**

**Mid-State Stainless, Inc.,**

**Defendant.**

---

William L. Lucas, Esq., on behalf of Plaintiff.

Richard A. Arrett, Esq. and Edwin E. Voigt, Esq., on behalf of Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Defendant's Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) [Doc. No. 71] and Plaintiff's Motion for Attorney's Fees and Expenses and Prejudgment Interest [Doc. No. 73]. On April 28, 2003, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge and the Honorable Michael J. Davis, United States District Judge for the District of Minnesota, ordered the case referred to the undersigned.

## I. PROCEDURAL HISTORY

Plaintiff filed his Complaint on October 30, 2000, in Hennepin County District Court alleging breach of a license agreement for United States Patent No. 5,133,375 ( '375 Patent). Defendant

removed the case to this Court in December 2000, denied the allegations of breach, and raised the following affirmative defenses: (1) joint ownership of the licensed patent; (2) the patent license was no longer in force; (3) invalidity of both the patent license and disclosure document for lack of consideration; (4) patent misuse; (5) no breach of the patent license; (6) invalidity of the license agreement for lack of consideration because the '375 patent is invalid; (7) no breach because the '375 Patent does not cover any Mid-State product; (8) invalidity and unenforceability of the license agreement because the '375 Patent is invalid because it does not name the correct inventors; (9) invalidity of the '375 Patent due to Schinzing's and/or his counsel's inequitable conduct before the United States Patent Office; and (10) Mid-State was fraudulently induced to enter the license agreement. (Am. Findings of Fact at 1-2.) Mid-State counter-claimed for declaratory judgment of patent invalidity and non-infringement of the '375 Patent and for fraudulent inducement and common law deceit. (Am. Answer & Counterclaims at ¶¶ 21-57.)

In July 2002, Judge Davis addressed the parties' cross motions for summary judgment. Judge Davis granted Plaintiff's motion for summary judgment as to Defendant's counterclaim that the '375 is invalid as obvious. (Mem. & Order of 7/16/02.) Judge Davis denied the rest of Plaintiff's summary judgment motion and denied Defendant's summary judgment motion. Id.

A bench trial was held in May 2003 before this Court. The sole issue on which the parties presented live testimony at trial was the validity of the '375 Patent. The Court issued its Amended Findings of Fact, Conclusions of Law and Order for Judgment on December 4, 2003, granting judgment to Plaintiff in the amount of $92,8000 plus interest. (Am. Findings of Fact at 26.)

## II. BACKGROUND

This case arises out of a dispute involving a license agreement in which Plaintiff licensed the use of its '375 Patent for a wheelchair washer to Defendant. Defendant obtained the license in order to further develop, manufacture and market the washer. In exchange, Defendant agreed to pay a royalty of $400 per machine. The parties entered into this agreement in April 1993. (Def. Ex. 40.) As to termination of the agreement, the license agreement provided for an indefinite term. It also provided:

> D. Upon termination of this Agreement for any reason, nothing herein shall be construed to release any party from its obligation which matured prior to the effective date of termination. MSI, its affiliates or its sublicensees may after the effective date of such termination sell all Licensed Products in stock and complete construction of all Licensed Products in the process of manufacture at any time of termination and sell the same, provided that MSI shall pay to S/S royalties on such Licensed Products as specified in this Agreement.
>
> E. Upon termination for any cause, other than the expiration of the letters patent granted under the Licensed Patent, MSI shall no longer have any right to the use of the Licensed Product or Technology.

(Complaint, Ex. A, Art. VI.)

Within six days of entering into the license agreement, at Plaintiff's request, Plaintiff had Defendant's General Manager, Marshall Ryan, sign a disclosure document. (Am. Findings of Fact at ¶ 82.) This document states:

> I will in no way build or have build [sic] or disclose any information with anyone or any other manufacturers [sic] company on said products, without the written permission from Wally Schinzing or Susan Spaulding.

(Complaint, Ex. B.) Plaintiff also signed this document, though it involved no separate consideration. (Am. Findings of Fact at ¶ 85.) Plaintiff believed that under this disclosure agreement, Defendant was allowed to build the licensed machine, but could only build other machines with Plaintiff's written

permission. Id. at ¶ 87.

## III. PARTIES' POSITIONS

Pursuant to Fed. R. Civ. P. 59(e), Defendant moves to alter or amend judgment. While Defendant requests that the Court amend judgment on several grounds, the primary substantive reasons and amendments sought include the following :

1. To indicate that Defendant also counterclaimed for declaratory judgment of non-infringement of the '375 Patent;
2. That the Court award Defendant declaratory judgment of non-infringement;
3. That the Court provide analysis as to how Plaintiff met its burden of proving breach of a clause that survived termination, specifically, identifying how Defendant sold "licensed product" post-termination. Accordingly, Defendant requests that the altered or amended judgment reflect that Defendant did not breach the license agreement. Defendant also seeks to alter or amend the judgment in conformity with its position that Plaintiff has failed to state a cause of action post-termination upon which relief can be granted. Defendant contends that Plaintiff has not initiated a cause of action against Defendant for patent infringement following termination of the license agreement.
4. Defendant requests that the Court change the judgment to indicate that Defendant did not breach the agreement, as Defendant contends it did not sell licensed product post termination.

(Def.'s Mem. to Alter or Amend Judgment at 4-5.)

Defendant points to paragraph 25 of its counterclaim, and its prayer for relief, in which it pled

that its wheelchair washing machines did not infringe on any valid claim of the '375 Patent and requested a declaration to that effect. Id. at 1. Defendant also argues that the trial evidence showed that Defendant's products sold since termination have motor-powered, oscillating back-and-forth spray arms, rather than circular rotating arms powered by water pressure. Id. at 3. The Court found that since termination, Defendant sold some models without motorized rollers (Am. Findings of Fact at ¶ 93), and that the '375 Patent claimed to include rollers and the means for rotating said roller means. Id. at 64. Thus, Defendant argues that this further supports its position that any models it sold since termination without motorized rollers do not infringe claims 1-2 of the '375 Patent. (Def.'s Mem. to Alter or Amend Judgment at 3.)

Defendant argues that the judgment does not sufficiently analyze the issue of breach following termination. Id. at 4. Also, Defendant contends that the damages' standard is in error because it contained no analysis of Defendant selling "licensed product" post-termination. Id. Furthermore, Defendant contends that just because it mistakenly paid Plaintiff royalties prior to the termination of the license agreement, that does not alter Plaintiff's burden of proving breach of the agreement post-termination. Id.

Plaintiff argues that Defendant does not meet the standard to amend or alter the judgment under Fed. R. Civ. P. 59(e). (Pl.'s Mem. in Opp. to Def.'s Mot. to Alter or Amend at 1.) In particular, Plaintiff contends that Defendant based its non-infringement claim upon its claim of invalidity. As the Court found that the patent was not invalid, Plaintiff argues that Defendant's non-infringement claim fails accordingly. Id. at 2. Moreover, Plaintiff notes that because Defendant failed to request judgment of non-infringement in its proposed findings of fact and at trial, it may not now raise the issue. Id.

Even if the Court considers Defendant's non-infringement argument, Plaintiff contends that it is directed at only claim 1 of the patent. Because the patent has two claims, Plaintiff argues that infringement of one claim constitutes infringement of the entire patent. Id. at 3. Furthermore, Plaintiff states that the undisputed evidence at trial proved that Defendant's products do infringe claim 1 of the patent. Specifically, the spray arms of Defendant's products perform the same work as the spray arms of Plaintiff's patent and they also clean wheelchairs in substantially the same way and achieve the same result. Id. at 4. Finally, Plaintiff notes that contrary to Defendant's assertions, some of Defendant's products do have motorized rollers. Id. at 5. Thus, Plaintiff contends that even if the Court considers Defendant's arguments in support of non-infringement, they do not lend adequate support to give Defendant a judgment of non-infringement.

## IV. DISCUSSION

### A. Standard of Review

A motion to amend or alter judgment in a non-jury case may be granted when "evidence has been admitted or excluded improperly, evidence has been newly discovered, or improper actions of counsel have affected the outcome of the case." Fed. R. Civ. P. 59. However, "a motion to amend should [not] be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." Fontenot v. Mesa Petroleum Co., 791 F.2d 1207,1219 (5th Cir. 1986). Parties should not use a motion to alter and amend judgment to raise arguments which could, and should, have been made before judgment issued. Bogosian v. Woloohojian Realty Corp., 323 F.3d 55 (1st Cir. 2003); see also, NL Industries, Inc. v. Commercial Union Ins. Cos., 938 F.Supp. 248 (D. N.J. 1996) (Party may not use motion to

reconsider to reargue motion or present evidence which should have been raised before.) Thus, a motion made pursuant to Rules 52 and 59 is not intended to routinely give litigants a second bite at the apple, but to afford an opportunity for relief in extraordinary circumstances. Dale and Selby Superette & Deli v. U.S. Dept. of Agriculture, 838 F.Supp. 1346, 1347-1348 (D. Minn. 1993).

**B. Defendant's Claim of Non-Infringement**

As noted above, in a Rule 59 motion, a party may not introduce evidence that could have been discovered earlier, but was not proffered at trial. See, supra. While Defendant included a claim for a declaration of non-infringement in its counterclaim (Def.'s Answer and Counterclaims, ¶¶ 23, 25), it offered no evidence or argument to this effect at trial, nor did it include any such proposed finding of fact. ( See, Def.'s Revised Proposed Findings of Fact at ¶ 3.) In fact, the Court's Amended Findings of Fact, in which it enumerated Defendant's counterclaims, mirrors the very language proposed by Defendant – language which makes no mention of a counterclaim regarding a declaration of non-infringement.[1] The entirety of Defendant's case at trial consisted of its arguments with respect to invalidity.

Because Defendant failed to present evidence of non-infringement at trial, failed to seek a declaration of non-infringement at trial, failed to include a declaration of non-infringement in its proposed findings of fact and conclusions of law and has not persuasively argued that it has new

---

[1] Compare, "Mid-State also counterclaimed for a declaratory judgment of patent invalidity of the '375 Patent and for fraudulent inducement and common law deceit" (Am. Findings of Fact at 2.), with "Mid-State also counterclaimed for a declaratory judgment of patent invalidity of the '375 patent (First Counterclaim) and for Fraudulent Inducement and Common Law Deceit (Second Counterclaim.)" (Def.'s Revised Proposed Findings of Fact at ¶ 3.)

evidence, previously unavailable, the Court denies Defendant's motion to amend or alter judgment to include a finding of non-infringement.

**C. Breach**

Defendant argues that the Court did not sufficiently analyze the issue of breach and, in short, even if the patent was valid, Defendant's products are not contained in the patent, and therefore, Defendant could not breach the agreement. (See, Def.'s Mem. to Alter or Amend Judgment at 4-5.) Again, the thrust of Defendant's case at trial focused on invalidity of the patent. No live testimony was presented on the issue of breach by the defense.

The relevant clauses in the licensing agreement provide:

Article VI – Term and Termination

D. Upon Termination of this Agreement for any reason, nothing herein shall be construed to release any party from any obligation which matured prior to the effective date of termination. MSI, its affiliates or its sublicensees may after the effective date of such termination sell all Licensed Products in stock and complete construction of all Licensed Products in the process of manufacture at the time of termination and sell the same, provided that MSI shall pay to S/S [Plaintiff] royalties on such Licensed Products as specified in this Agreement.

E. Upon termination for any cause, other than the expiration of the letters patent granted under the Licensed Patent, MSI shall no longer have any right to the use of the Licensed Patent or Technology.

(Complaint, Ex. A., Art. VI) The agreement defines "Licensed Products" as "any wheel chair cleaning assembly, subassemblies, components, replacement parts of other products which embody the Licensed Patent and Technology. Id. at Art. I. "Technology," per the agreement, is "any knowledge, information, know-how and devices, whether patentable or not, in the possession of S/S [Plaintiff] and

relating to the Washer." Id.

Interpretation of a contract is a question of law. Edwards v. Petrone, 465 N.W.2d 847, 848 (Wis. Ct. App. 1990). Evidence of parties' intent, such as the course of performance, is admissible only if the contract is ambiguous. Heder v. City of Two Rivers, 149 F.Supp.2d 677, 687 (E.D. Wis. 2001), vacated on other grounds, 295 F.3d 777 (7th Cir. 2002), citing, Mielke v. Nordeng, 337 N.W.2d 462 (Wis. Ct. App. 1983). A contract is ambiguous if its terms are reasonably susceptible to more than one construction. Gorton v. Hostak, Henzl & Bichler, S.C., 577 N.W.2d 617 (Wis. 1998). Under Wisconsin law, parties' course of dealings is an acceptable method of proof of contractual obligations. Northwestern National Ins. Co. v. Marsh & McLennan, Inc., 817 F.Supp. 1424, 1431 (E.D. Wis. 1993); see also, Central States, Southeast, Southwest Areas Pension Fund v. Kroger Co., 226 F.3d 903 (7th Cir. 2000), cert. denied, 532 U.S. 990 (2001) (noting that, in general, the practical interpretation the parties to a contract have given that contract is strong evidence of their intended meaning for an ambiguous term); Sethness-Greenleaf, Inc. v. Green River Corp., 65 F.3d 64 (7th Cir. 1995) (course of dealing or course of performance can be used to flesh out ambiguous or incomplete agreement).

At issue here is what is meant by the language in the termination provision stating that "MSI shall no longer have any right to the use of the Licensed Patent or Technology." ((Complaint, Ex. A, Art. VI. (E)) The license agreement defines the "Licensed Patent" as U.S. Patent No. 5,133,375, and had the termination provision merely referred to the "Licensed Patent," there would be no ambiguity. Instead, the termination provision encompasses "the Licensed Patent or Technology." Id. at Art. I (B) (emphasis added). "Technology" is defined as "any knowledge, information, know-how and devices,

whether patentable or not, in the possession of S/S and relating to the Washer." Id. at Art. I (A). The very terms "knowledge," "information," "know-how," and "devices" are vague, as well as the phrase "relating to the washer." Because the language is so broad, it could be construed to refer to only the '375 patent washer, or it could include similar products "relating to" the '375 patented device. Had Plaintiff merely sought to protect products which embody only the licensed patent, he could have expressly stated that. Thus, given this sufficient evidence of ambiguity, the Court finds that extrinsic evidence of the parties' intent is relevant to the interpretation of the license agreement.

By using the words "or Technology," one must presume that the parties understood the license agreement would be broadly construed. Such an interpretation is further buttressed by the Disclosure Document (Complaint, Ex. B.), which more explicitly provides that Defendant agrees to refrain from building or disclosing information about the washer without Plaintiff's written permission. In this Order, the Court is not, however, defining "Technology." Rather, the Court is noting that the license agreement language is ambiguous and however it might be construed, the Court must examine the parties' course of performance to shed light upon the parties' understanding and intent.

The parties' course of performance under this agreement is instructive. The license agreement provides for the payment of royalties on the wheelchair washing machines until the date of termination of the license agreement. As the Court noted in its Amended Findings of Fact, Defendant contemplated that the first 99 wheelchair washing machines sold, which did not include rotary spray arms, were products covered by the license agreement, and, in fact, Defendant paid royalties on these products. (Am. Findings of Fact at 25.) Defendant argues that it affirmatively proved at trial that none of its products sold post-termination utilized rotary spray arms which are caused to rotate by liquid.

(Def.'s Mem. to Alter or Amend Judgment at 6.) Nevertheless, Defendant previously paid royalties on the first 99 machines, none of which utilized rotary spray arms, indicating that it understood such machines to be encompassed by the license agreement.

As to its conduct post-termination, Defendant argues that it did not sell "Licensed Product," therefore, it is not liable for such damages. Again, the license agreement provides for "Licensed Product or Technology." ((Complaint, Ex. A, Art. V (E.)) "Technology" is defined as "any knowledge, information, know-how and devices, whether patentable or not, in the possession of S/S and relating to the Washer." Id. at Art. I (A). Applying the broad definition, "Technology," could be interpreted to included Defendant's products. Given Defendant's exclusive focus at trial on the issue of invalidity, it cannot now raise arguments that could have been raised at trial regarding breach. For these reasons, Defendant's motion to amend or alter judgment as to breach is denied.

**F. Damages**

The Court held that, to the extent that Defendant breached the agreement after the date of termination, "the appropriate measure of damages is the calculation of a reasonable royalty on all machines sold which embodied the licensed patent and/or technology." (Am. Findings of Fact at 25.) The Court determined that Defendant was liable for royalties for the 232 machines for which it had not paid any royalties, in the amount of $92,800. Id. Defendant argues first that the Court's standard was in error because the license agreement defines "licensed products" to include products "which embody the Licensed Patent and Technology." (Def.'s Mem. to Alter or Amend Judgment at 4.) Defendant argues that there is no analysis showing that Defendant sold "licensed product," post-termination. Id.

As discussed, supra, the Court finds the agreement's definition of "technology" ambiguous, and

therefore turns to the parties' course of performance as to what the agreement encompassed. While Defendant argues that none of its products fall within Claim 1 of the '375 Patent, because they do not include rotating spray arms rotated by water pressure, Defendant paid royalties on the first 99 products. Id. at 5. None of these products utilized rotary spray arms. Defendant then refused payment on 232 other machines. Defendant characterizes the royalty payments on the first 99 machines as a mistake, resulting in a windfall for Plaintiff. Id. Although Defendant argues that it is black letter law that, following termination, parties are relegated to their status prior to the grant of the license (Def.'s Mem. to Alter or Amend Judgment) (citations omitted), in Universal Gym Equipment, Inc. v. Erwa Exercise Equipment, Ltd., 827 F.2d 1542, 1550 (Fed. Cir. 1987), the court addressed a similar situation. The Universal Gym court posed the question of whether patent law precludes the application of state law to validate and award damages for a licensee's breach of a contractual provision by which the licensee agreed that, after its license to manufacture the licensor's product had terminated, the licensee would not include the licensor's features and designs in the licensee's products. Id. The court concluded, "patent law does not preclude the application of state contract law to provide damages for breach of this agreement." Id. While Defendant argues that the agreement in this case, unlike that in Universal Gym, contained no prohibition against selling licensed product, post-termination, the agreement provides that upon termination, Defendant may sell all licensed products in stock and complete construction of all licensed products in the process of manufacture and sell them, provided that Defendant pay to Plaintiff all the royalties on such products as specified in the license agreement. (Complaint, Ex. A., Art. VI.) The agreement contemplates that Plaintiff receive royalties for its licensed products following termination.

The Court concludes that the 232 machines fall within “licensed product,” as they are essentially the same as the 99 machines for which Defendant paid royalties and contemplated to be “licensed product.” The Court finds the course of performance persuasive evidence of the parties’ intent and understanding and concludes that the damages total, which includes the 232 wheelchair washers, is a reasonable calculation of damages. Thus, the Court denies Defendant’s motion to alter or amend the Findings of Fact as it pertains to damages.

**G. Miscellaneous Proposed Changes**

**A. Summarization of Judge Davis’ Summary Judgment Decision**

Defendant seeks clarification of the Amended Findings of Fact and Conclusions of law as it pertains to Judge Davis’ Summary Judgment Order. (Def.’s Mem. to Alter or Amend Judgment at 2.) At summary judgment, the Court granted Plaintiff’s motion for partial summary judgment as to Defendant’s counterclaim that the ‘375 patent was invalid as obvious, in view of the teachings of Clark, Zademach, Haverberg or Clark, and denied summary judgment of the other claims and counterclaims. (Order and Mem. of July 16, 2002.) Discussing Judge Davis’ decision, in the Amended Findings of Fact and Conclusions of Law, this Court stated:

> Judge Davis ruled, in his Memorandum Opinion and Order dated July 16, 2002, that claim 1 of the ‘375 Patent was not obvious to one skilled in the art in view of the prior art identified by Mid-States’ expert Richard Bartz in his expert report. Mid-State failed to prove, by clear and convincing evidence, that the student proposal and/or student presentation in combination with the other art of record renders claim 1 of the ‘375 Patent obvious.

(Am. Findings of Fact at 23-24.) Defendant argues that at summary judgment, Judge Davis did not have before him and did not rule on the obviousness of the ‘375 Patent in view of the public use or the

printed publication which occurred at the University of Northern Iowa combined with the '375 prior art of record. (Def.'s Mem. to Alter or Amend Judgment at 2.)

While the Court is willing to make the requested clarification regarding its description of the summary judgment ruling, it is unwilling to alter the conclusion that Defendant failed to prove, by clear and convincing evidence, that the student proposal and/or student presentation in combination with the other art of record rendered claim 1 of the '375 Patent obvious.

**B. Typographical Errors**

Defendant also seeks to amend the judgment via Fed. R. Civ. P. 59 to correct two typographical errors. First, Defendant points out that on page 24 of the Amended Findings of Fact that the Court quoted the license agreement as reading "license to patent and technology," when the actual language in the license is "licensed patent and technology." Second, Defendant notes that in one of its proposed findings of fact, it inadvertently referred to "licensed product" instead of "licensed patent." When the Court included Defendant's proposed paragraph into its Amended Findings of Fact and Conclusions of Law, it included Defendant's typographical error, found in paragraph 76 and page 24, paragraph E.

As these requested corrections are merely to correct and clarify the Court's judgment, the Court grants Defendant's motion as to these clarifications.

**H. Plaintiff's Motion for Attorney's Fees and Expenses and Prejudgment Interest**

**A. Attorney's Fees and Expenses**

Plaintiff contends that he is entitled to fees and expenses, citing Wisconsin legal authority and the plain language of the license agreement. Plaintiff points to the following language in the licensing

agreement to support its position:

> Article VIII - Indemnifications and Insurance
>
> A. MSI agrees to indemnify S/S and hold S/S harmless against all liabilities, demands, damages, expenses, or losses arising from (i) the manufacture, use, or sale of Licensed Products by MSI, an affiliate or sublicensees, (ii) from a third party's use of a Licensed Product purchased or leased from MSI, an affiliate or sublicensee of MSI, or (iii) from a third party's manufacture of a Licensed Product at the request of MSI.

(Complaint, Ex. A, Art. VIII)

Wisconsin follows the "American Rule," under which parties assume responsibility for their own attorney fees. Hunzinger Constr. Co. v. Granite Resources Corp., 538 N.W.2d 804, 809 (Wis. Ct. App. 1995). "As a general proposition, attorney fees are not allowable unless a statute or an agreement of the parties provides otherwise." Meas v. Young, 417 N.W.2d 55, 57 (Wis. Ct. App. 1987) (citations omitted). Wisconsin also recognizes an exception to the general rule when:

> [T]he wrongful acts of the defendant have involved the plaintiff in litigation with others, or placed him in such relation with others as to make it necessary to incur expense to protect his interest, such costs and expense should be treated as the legal consequences of the original wrongful act.

Id., citing Weinhagen v. Hayes, 190 N.W.1002, 1003 (Wis. 1922).

Plaintiff argues that both the indemnification language in the license agreement and the Weinhagen decision require Defendant to bear Plaintiff's attorney's fees and costs. Defendant argues that Plaintiff's motion should not be considered because the request for attorney's fees was not included in either Plaintiff's pretrial or post-trial findings of fact and conclusions of law, nor was it

submitted at trial. (Def.'s Mem. Opp. to Pl.'s Mot. Atty's Fees at 1.) The Court is not persuaded by Defendant's argument, as a motion for attorney's fees and costs is typically made by separate motion and is not included in a party's proposed findings of fact and conclusions of law.[2] See Osterneck v. Ernst & Whinney, 489 U.S. 169, 175 (1989) (noting difference between motions for attorney's fees as compared to motions for prejudgment interest; the former are not regarded as part of the merits judgment).

Plaintiff is not trying to recover litigation expenses it incurred in a dispute with a third party. The contractual language does not mention attorney's fees between parties. The language at issue provides that Defendant agrees to "indemnify" and hold Plaintiff harmless against damages resulting from the manufacture, use or sale of products by Defendant. ((Complaint, Ex. A., Art. VIII (A)). Although not explicit, the language refers to indemnification relating to third-party claims, and is found, appropriately enough, in the section of the license agreement captioned "Indemnification and Insurance."(Complaint, Ex. A, Art. VIII.) Had the parties intended to include a provision requiring the breaching party to bear the attorney's fees of the other party, a logical section to include such a provision would have been either there or in the "Construction/Arbitration" section. In that section, the license agreement provides that Wisconsin law governs any disputes and it describes a procedure for arbitrating disputes. (Complaint, Ex. A, Art. XII). As to arbitration, the agreement states that expenses "will be shared equally between the parties." Id. In Hunzinger, 538 N.W.2d at 809, the court, "as is the general rule,

[2]Defendant certainly is correct, however, to note that Rule 59 motions to alter or amend judgment require a party to have submitted some evidence, either at trial or in its proposed findings of fact and conclusions of law, on the issue at hand to the court. See, supra.

we will not construe an obligation to pay attorneys' fees contrary to the American Rule unless the contract provision clearly and unambiguously so provides." (citations omitted). Similarly here, the license agreement is silent as to an award of attorney's fees between the parties. Absent a clear expression of intent to the contrary, the court is unwilling to permit an award of attorney's fees.

The Weinhagen rule appears to be similarly applied to situations involving third-parties: "Under Weinhagen, attorney's fees are recoverable from a wrongdoer only if they were incurred by a party who was forced to litigate with a third party." Marquardt v. Milwaukee Cty., 639 N.W.2d 762, 768-69 (Wis. Ct. App. 2001). Again, because Plaintiff's motion does not involve a third-party, Weinhagen is not applicable. The Court denies Plaintiff's motion for attorney's fees and costs.

**2. Prejudgment Interest**

Plaintiff also moves for an award of prejudgment interest. Plaintiff argues that the Court's judgment against Defendant, which includes interest, refers also to prejudgment interest. (Pl.'s Mem. Supp. Mot. Atty's Fees at 3.) Further, Plaintiff contends that an award of prejudgment interest is consistent with the license agreement language in which Defendant agreed to indemnify Plaintiff and hold him harmless against all liabilities, demands, damages, etc., resulting from the manufacture, sale or use of the licensed products. Id. In providing a method for calculating prejudgment interest, Plaintiff refers to Wisconsin's statutes for calculating interest on jury verdicts and post-judgment interest. Id. at 4, citing WI. Stat. §§ 814.04(4), 815.05.

Defendant argues that Plaintiff's motion, which should be characterized as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e), is untimely, and therefore should be denied. Defendant also disputes the applicability of the Wisconsin statutes upon which Plaintiff bases his calculation of

prejudgment interest. (Def.'s Mem. Opp. to Pl.'s Mot. Atty's Fees at 1, 4.)

A post-judgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e). Osterneck v. Ernst & Whinney, 489 U.S. 169, 175 (1989). The Supreme Court notes that postjudgment interest is really an element of plaintiff's complete compensation. Id. "Thus, unlike attorney's fees, which at common law were regarded as an element of costs and therefore not part of the merits judgment, prejudgment interest traditionally has been considered part of the compensation due plaintiff." Id. (citations omitted.) Furthermore, unlike a motion for attorney's fees and costs, a motion for discretionary prejudgment interest does not raise wholly collateral issues to the judgment in the main cause of action. Id.

Here, Plaintiff's motion for prejudgment interest was filed on December 22, 2003. This Court's Amended Findings of Fact and Conclusions of Law were filed on December 2, 2003. Under Fed. R. Civ. P. 59(e), a motion to amend or alter judgment must be filed no later than 10 days after entry of judgment. Having filed to meet the filing date, the Court denies Plaintiff's motion for prejudgment interest.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) [Doc. No. 71] is **DENIED, in part,** and **GRANTED, in part**, consistent with this Order; and

2. Plaintiff's Motion for Attorney's Fees and Expenses and Prejudgment Interest [Doc. No. 73] is **DENIED** as to attorney's fees and expenses and is **DENIED** as to prejudgment interest.

Dated: May 18, 2004

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge