CV #00-2686 SRN

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 04-2535

| | | |
|---|---|---|
| Walter W. Schinzing, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Mid-States Stainless, Inc., a | * | |
| Wisconsin Corporation, | * | |
| | * | |
| Appellant. | * | |

Submitted: March 18, 2005
Filed: July 15, 2005

Before WOLLMAN, GIBSON, and COLLOTON, Circuit Judges.

WOLLMAN, Circuit Judge.

Mid-State Stainless, Inc. (Mid-State), appeals from the rejection of its patent invalidity counterclaim and from the denial of its motion to amend the judgment to include a declaratory judgment of non-infringement and a judgment that it had not breached a patent license agreement. We affirm in part, reverse in part, vacate in part, and remand.

I.

This is a patent case involving a machine designed to wash wheelchairs, the idea for which was originally conceived by Walter Schinzing (Schinzing) in 1987.

SCANNED
SEP 2 3 2005
U.S. DISTRICT COURT MPLS

Schinzing filed a patent application with the United States Patent and Trademark Office (PTO) in August 1988 (the '091 application). The PTO rejected Schinzing's application as obvious in December 1988 and rejected amended applications as obvious in January 1989 and July 1989.

Contemporaneous with the filing of the '091 application, Schinzing made arrangements with Elm Springs Enterprises to manufacture his washer. Shortly thereafter, he permitted four students from Dr. Lou Honary's Methodology and Conceptualization class at the University of Northern Iowa to analyze the washer design over the course of a two-semester class project.[1] The students recommended improvements to the washer in a written report entitled "Wheel-Chair Modifications Proposal" (the student report). The students also demonstrated a version of the washer that incorporated their recommended improvements to an audience that included Schinzing, Dr. Honary, other students and professors, partners of Elm Springs, and a member of Congress (the student demonstration).

In October 1989, Schinzing filed a second patent application (the '119 application), which was a continuation-in-part of the '091 application. The '119 application incorporated the improvements recommended by the students and included several of the students' drawings. Schinzing maintained that he was the sole inventor of the modified washer. After the PTO rejected the '119 application,[2] Schinzing continued to work on further modifications to the washer. He and several other members of Elm Springs filed a third patent application in November 1990 (the '757 application). The subsequently amended '757 application presented an

---

[1]The undergraduate course was part of an engineering technology program. Honary Dep. at 5. Dr. Honary indicated that the students in the program were trained to be "somewhere between a technician and an engineer with a management component to learn to manage projects." Id. at 6.

[2]Schinzing later abandoned the '119 application when he failed to respond to an August 1, 1990, letter from the PTO.

independent claim consisting of seven elements and a second claim dependent on the first. The PTO issued patent number 5,133,375 (the '375 patent) for the amended '757 application in July 1992.

In April 1993, Schinzing, in partnership with a woman named Sue Spaulding (collectively, S/S Products), entered into a license agreement with Mid-State under which Mid-State would develop, manufacture, use, and market the washer. Mid-State agreed to pay S/S Products a royalty of $400 for each washer that it installed. Mid-State manufactured and sold 99 washers under the agreement and paid royalties on those washers. After S/S Products terminated the agreement in February 1998, Mid-State sold an additional 232 washers but did not pay royalties on them.

Schinzing sued Mid-State in Minnesota state court, alleging that Mid-State had breached the license agreement by failing to pay royalties on the washers that it sold after the termination of the agreement. Mid-State removed the case to federal court, raised ten affirmative defenses, and counterclaimed for a declaratory judgment of patent invalidity and non-infringement. The parties consented to a trial before a magistrate judge. After a two-day bench trial, the district court concluded that Mid-State had breached the license agreement and that the '375 patent was not invalid. Mid-State filed a motion to amend the judgment to include a declaratory judgment of non-infringement and a judgment that Mid-State had not breached the license agreement. See Fed. R. Civ. P. 59(e). Mid-State appeals from the district court's denial of its motion and from the district court's conclusion that the '375 patent was not invalid.

## II.

We briefly address the question of jurisdiction. This case involves substantive issues of patent law that are usually adjudicated in the Court of Appeals for the Federal Circuit. We are required to exercise jurisdiction, however, under the holding of Holmes Group v. Vornado Air Circulation, 535 U.S. 826, 829-31 (2002), which

makes clear that the Federal Circuit's jurisdiction attaches when a plaintiff's well-pleaded complaint asserts a claim arising under federal patent law, but not when the patent issue is raised for the first time in a defendant's counterclaim. Because Schinzing's complaint alleged no claims arising under federal patent law and the patent issues arise solely from Mid-State's counterclaim, appellate jurisdiction properly lies with us. Cf. Telecom Tech. Servs. Inc. v. Rolm Co., 388 F.3d 820, 826 (11th Cir. 2004) ("Because the face of the complaint, here, addresses antitrust issues and patent infringement issues are only raised as counterclaims, the Federal Circuit determined that it did not have jurisdiction over the present case and transferred it to this court."); E.I. Du Pont de Nemours & Co. v. Okuley, 344 F.3d 578, 583 n.3 (6th Cir. 2003) (noting that counterclaims cannot serve as the basis for Federal Circuit jurisdiction).

In examining this case, we adopt the Federal Circuit's precedent on substantive issues of patent law.

**III.**

We turn first to Mid-State's counterclaims of patent invalidity, because if we conclude that the patent is invalid then we need not consider whether Mid-State was guilty of infringement. See Lough v. Brunswick Corp., 86 F.3d 1113, 1123 (Fed. Cir. 1996) ("Invalidity is a complete defense to infringement and . . . .[n]o further public interest is served by our resolving an infringement question after a determination that the patent is invalid."). Mid-State asserts four theories under which the district court should have invalidated the '375 patent: (1) inventorship (because Schinzing failed to name the students as co-inventors); (2) prior publication (based on the student report); (3) public use (based on the student demonstration); and (4) inequitable conduct.

A.

The first step in any invalidity analysis is claim construction. Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc., 344 F.3d 1186, 1192 (Fed. Cir. 2003). Construction of the claims by the trial court is often conducted upon a preliminary evidentiary hearing, called a Markman hearing (which derives its name from Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996)). EMI Group North America, Inc. v. Intel Corp., 157 F.3d 887, 891-92 (Fed. Cir. 1998). A court is required to construe the limitations of the claims and apply them to the allegedly invalidating acts. See Dana Corp. v. American Axle & Mfg., Inc., 279 F.3d 1372, 1376 (Fed. Cir. 2002). See also Trovan, Ltd. v. Sokymat SA, Irori, 299 F.3d 1292, 1302 (Fed. Cir. 2002) (claim construction is the first step in invalidity analysis based on inventorship); Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1346 (Fed. Cir. 2000) (same with respect to prior publication); Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371, 1377 (Fed. Cir. 2004) (same with respect to public use).

The district court failed to construe the claims of the '375 patent. It is true that a trial court need not parse claims when there is no "issue in material dispute as to the meaning or scope of the claims." U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1570 (Fed. Cir. 1997); see also id. at 1562-63 ("there was no argument at trial as to the meaning of technical terms or words of art insofar as they concern[ed] the determination of obviousness"). Because neither Schinzing nor Mid-State contests the meaning of any terms or words used in the description of the '375 patent, the threshold claim construction is not essential for purposes of defining the claim. What is indispensable, however, is an element-by-element comparison of the '375 patent to: (1) the aspects of the modified washer that the evidence showed were proposed by the students; (2) the device shown in the student demonstration; and (3) the device described in the student report. These are questions of fact, cf. id. at 1570, and they were not reached by the district court. Accordingly, we must remand the case so that the district court may conduct these comparisons for the purpose of addressing Mid-

State's invalidity counterclaims related to inventorship, prior publication, and public use. Cf. Graco, Inc. v. Binks Mfg. Co., 60 F.3d 785, 791 (Fed. Cir. 1995) (conclusory factual findings on infringement provide an independent basis for remand).

We note that on remand the district court's comparison of the '375 patent to the device described in the student report and the device shown in the student demonstration should reflect the Federal Circuit's observation that 35 U.S.C. § 102(b) may bar patentability by anticipation if the earlier device includes every limitation of the later claimed invention, or by obviousness if the differences between the claimed invention and the earlier device would have been obvious to one of ordinary skill in the art. Netscape Communications Corp. v. Konrad, 295 F.3d 1315, 1321 (Fed. Cir. 2002). Although obviousness is a legal conclusion, it requires underlying factual inquiries that include: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the art at the time the invention was made, and (4) any objective evidence of nonobviousness. See Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966).

B.

Mid-State contends that the patent is invalid because Schinzing engaged in inequitable conduct before the PTO.[3] Specifically, Mid-State asserts inequitable conduct based on Schinzing's failure to identify in the '757 application: (1) Schinzing's previously rejected patent applications (the '091 application and the '119 application); (2) a prior patent (the Haverberg patent); (3) the student co-inventors; (4) the student report; and (5) the student demonstration.

---

[3]Although the practical effect is generally the same, inequitable conduct renders a patent unenforceable rather than invalid. Ulead Systems, Inc. v. Lex Computer & Mgmt. Corp., 351 F.3d 1139, 1150 n.8 (Fed. Cir. 2003).

A district court's determination regarding inequitable conduct before the PTO is reviewed for abuse of discretion. PerSeptive Biosystems v. Pharmacia Biotech, Inc., 225 F.3d 1315, 1319 (Fed. Cir. 2000). To sustain a claim of inequitable conduct, the alleged infringer must show by clear and convincing evidence that (1) the nondisclosed information would have been material to the patent examiner, and (2) the nondisclosure was intentional. Under Sea Indus., Inc. v. Dacor Corp., 833 F.2d 1551, 1559 (Fed. Cir. 1987). These two elements must be balanced against each other, and if one is particularly strong, a lesser degree of the other may suffice to show inequitable conduct. Id. Nonetheless, "materiality does not presume intent, which is a separate and essential component of inequitable conduct." Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1352 (Fed. Cir. 2002) (citation omitted).

The district court's findings on materiality and intent are reviewed for clear error, and thus will not be overturned in the absence of a definite and firm conviction on the part of the reviewing court that a mistake has been made. Hoffmann-La Roche, Inc. v. Promega Corp., 323 F.3d 1354, 1359 (Fed. Cir. 2003) (citation and quotation marks omitted). The district court's credibility determinations on intent to deceive the PTO can virtually never be clear error. Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1381 (Fed. Cir. 2001) (citation and quotation marks omitted). Gross negligence alone does not mandate a finding of intent to deceive. Kingsdown Med. Consultants v. Hollister, Inc., 863 F.2d 867 (Fed. Cir. 1988) (en banc in relevant part) (resolving conflicting precedent pertaining to gross negligence and intent).

The district court found that "there was no evidence at trial that Mr. Schinzing intentionally withheld anything from the Patent and Trademark Office" and that "Mr. Schinzing consistently testified that the student proposal was an educational opportunity provided to the students as part of their undergraduate course requirements and that the students' proposal was not a significant part of the invention as finally patented." D. Ct. Order of May 18, 2004, at 23. Although the

district court did not specifically address Mid-State's allegations of inequitable conduct based on Schinzing's failure to disclose the prior patent applications, the Haverberg patent, and the student report, the factual findings that these nondisclosures were not intentional is implicit in the district court's finding that Schinzing did not intentionally withhold "anything" from the PTO. We conclude that the district court's factual findings as to intentionality are not clearly erroneous. Because none of Schinzing's nondisclosures was intentional, the district court did not err in finding that Schinzing did not engage in inequitable conduct before the PTO.

## IV.

Although we are unable to determine whether the '375 patent is invalid, we address Mid-State's other issues on appeal in the interest of judicial economy. We review the denial of a Rule 59(e) motion to amend the judgment for abuse of discretion. Mathenia v. Delo, 99 F.3d 1476, 1480 (8th Cir. 1996).

### A.

A claim for a declaration of non-infringement makes a counterclaim for patent infringement compulsory. Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc., 347 F.3d 935, 938 (Fed. Cir. 2003) (noting that this is a uniform national rule established by the Federal Circuit). A party that does not assert a compulsory counterclaim waives its right to bring the counterclaim and is forever barred from asserting that claim in future litigation. Id. The burden is always on the patent holder to show infringement. Under Sea Indus., 833 F.2d at 1557.

Mid-State counterclaimed for a declaratory judgment of non-infringement in its answer to Schinzing's complaint. Accordingly, Schinzing was obligated to counterclaim for infringement and had the burden to show infringement. Schinzing argues that because Mid-State failed to reassert its request for a declaratory judgment in its proposed findings of fact and conclusions of law, Mid-State has waived or

abandoned its counterclaim and Schinzing is therefore relieved of its obligation to assert a compulsory counterclaim. We disagree. Schinzing's obligation to assert a compulsory counterclaim arose when Mid-State filed its counterclaim for declaratory judgment. Irrespective of Mid-State's subsequent action or inaction, Schinzing, having failed to counterclaim or present any evidence of infringement at trial, has not proved infringement and is now barred from bringing a future infringement action. Accordingly, Mid-State is entitled to a declaratory judgment of non-infringement, and thus the district court abused its discretion in denying Mid-State's motion to amend the judgment. Moreover, because it is entitled to a declaratory judgment of non-infringement, Mid-State, as a matter of law, could not have infringed the '375 patent.

B.

Schinzing's allegation that Mid-State breached the license agreement is premised on article VI(D) of the agreement, which provides, in relevant part, that:

> Upon termination of this Agreement for any reason, [Mid-State] may after the effective date of such termination sell all Licensed Products in stock and complete construction of all Licensed Products in the process of manufacture at any time of termination and sell the same, provided that [Mid-State] shall pay to [S/S Products] royalties on such Licensed Products as specified in this Agreement.

License Agreement at 5.[4] The district court concluded that "[t]o the extent that Mid-State breached [the] agreement after the date of termination, the appropriate measure

---

[4]The license agreement defines "licensed products" as "any wheel chair cleaning assembly, subassemblies, components, replacement parts [or] other products which embody the Licensed Patent and Technology." License Agreement at 1. The "licensed patent" is defined as "U.S. Patent No. 5,133,375 and corresponding foreign patents or applications and including divisions, reissues, continuations, renewals, and extensions thereof." Id. "Technology" is defined as "any knowledge, information, know-how and devices, whether patentable or not, in the possession of [S/S Products] and relating to the Washer." Id.

of damages is the calculation of a reasonable royalty on all machines sold which embodied the licensed patent and/or technology." D. Ct. Order of May 18, 2004, at 25.

The district court's conclusion fails to distinguish between breach and infringement. The license agreement obligated Mid-State to pay Schinzing royalties on any washers that were either in stock or in the process of manufacture when the agreement was terminated. Schinzing may assert a claim for breach of contract against Mid-State for its failure to pay post-termination royalties on those washers. In contrast, any washers that Mid-State manufactured completely post-termination fell outside the scope of the license agreement, and Schinzing has no contractual remedy against Mid-State for its manufacture and sale of those washers. To conclude otherwise would mean that the agreement was irrevocable, an interpretation precluded both by Article VI of the agreement ("[u]nless terminated earlier, the term of this Agreement shall be indefinite") and by Schinzing's termination of the agreement.

When Schinzing terminated the agreement, Mid-State "no longer [had] any right to the use of the licensed patent or technology." License Agreement at 5. Accordingly, the appropriate recourse for Schinzing would have been an infringement action. That possibility, however, is now barred by our holding in part IV(A), supra.

We are left, then, to consider Schinzing's breach of contract claim with respect to those washers sold by Mid-State that were either in stock or in the process of manufacture when the agreement was terminated. Although we have held that Mid-State did not infringe the '375 patent in its manufacture and sale of the washers, it may still have breached the license agreement by failing to pay royalties in accordance with that agreement. On the other hand, if the district court concludes on remand that the '375 patent is invalid, then it will have to address Mid-State's

affirmative defense that the license agreement is invalid for lack of consideration.[5] Accordingly, we remand the breach issue. We also note that the record does not reflect how many of the 232 washers that Mid-State sold after the agreement had been terminated were either in stock or in the process of manufacture at the time of termination. If the district court concludes that Mid-State breached the license agreement by selling, after the agreement had been terminated, washers that were either in stock or in the process of manufacture at the time of termination, the district court will have to make a factual finding regarding the number of washers sold post-termination that fell within that category.

V.

We affirm the district court's ruling that the '375 patent is not unenforceable due to inequitable conduct. We vacate the district court's ruling that the patent was not invalid with respect to inventorship, prior publication, and public use. We reverse the district court's denial of Mid-State's motion to amend the judgment to reflect a declaratory judgment of noninfringement and remand with direction to grant the motion. We vacate the district court's ruling that Mid-State breached the license agreement, we vacate the damage award, and we remand for further proceedings consistent with this opinion.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

[5]But cf. Studiengesellschaft Kohle, M.B.H. v. Shell Oil Co., 112 F.3d 1561, 1568 (Fed. Cir. 1997) ("this court detects no significant frustration of federal patent policy by enforcing the [license agreement] to the extent of allowing [the patent holder] to recover royalties *until the date [the licensee] first challenged the validity of the claims*" (emphasis added)).